*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0118p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MUHAMMAD M. MANA AHMED,
            *Petitioner,*

            *v.*                                           No. 06-3811

MICHAEL B. MUKASEY, Attorney General,
            *Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A76 512 667.

Argued: September 17, 2007

Decided and Filed: March 20, 2008

Before: MOORE and GRIFFIN, Circuit Judges; GRAHAM, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Bridgette M. Sparkman, OWEN & ASSOCIATES, Southfield, Michigan, for Petitioner. Jeffrey J. Bernstein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Charles S. Owen, OWEN & ASSOCIATES, Southfield, Michigan, for Petitioner. Michele Y.F. Sarko, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. Petitioner Muhammad M. Mana Ahmed, a native and citizen of Yemen, seeks review of a final order of removal issued by the Board of Immigration Appeals, denying his motion to remand and affirming the determination of the Immigration Judge that he was ineligible for consideration of adjustment of status pursuant to the Child Status Protection Act of 2002 ("CSPA"), Pub. L. 107-208, 116 Stat 927. For the reasons stated below, we hold that the BIA abused its discretion by failing to address petitioner's newly acquired evidence. Accordingly, we grant Ahmed's petition for review, vacate the BIA's removal order, and remand to the BIA for further proceedings consistent with this opinion.

_____

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

I.

Ahmed, a 23-year-old native and citizen of Yemen, lawfully entered the United States on July 4, 1995, as a B-2 non-immigrant visitor for pleasure, with authorization to remain in the United States for a temporary period not to exceed January 3, 1996. He overstayed his visa. The Immigration and Naturalization Service (now the Department of Homeland Security, or "DHS") issued a Notice to Appear on December 19, 2003, in which it charged that petitioner was subject to removal pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), for having remained in the United States for a longer time than permitted.

On August 11, 2004, Ahmed appeared before an IJ and, through counsel, admitted to the factual allegations and conceded removability. He indicated, however, that he had applied for an adjustment of status pursuant to 8 U.S.C. § 1255.[1] The IJ granted Ahmed's request for a continuance to give him additional time to establish the precise receipt date by Citizenship and Immigration Services ("CIS") of an I-130 Petition for Alien Relative filed on his behalf by his adoptive father, Muthana Omer Ahmed, a naturalized United States citizen.[2] In his circumstances, the date on which the petition was filed with CIS was crucial to petitioner's entitlement to immediate adjustment of status under the terms of the CSPA.[3]

The CSPA provides that the age of an alien beneficiary on the date of filing of an I-130 petition with CIS is to be used to determine whether an immigrant relative visa is immediately available to the alien.[4] Thus, if an I-130 petition is filed for the child of a United States citizen when the child is twenty, that child will remain eligible for adjustment as an immediate relative, even if the adjustment does not occur until after the child turns twenty-one, provided the child remains unmarried. *See* 8 U.S.C. §§ 1101(b)(1); 1151(a)(1), (b)(2)(A)(i), and (f)(1); 1153(a)(1); *Matter of Avila-Perez*, 24 I. & N. Dec. 78 (BIA 2007).

Various regulations govern the filing procedure for immigration petitions such as the I-130 filed by Ahmed in the instant case. A petition "should be filed with the USCIS office with jurisdiction over the application or petition and the place of residence of the applicant or petitioner as indicated in the instructions with the respective form." 8 C.F.R. § 103.2(a)(6). In order to pinpoint the receipt date of an I-130 petition, "[a]n application or petition received in a [CIS] office *shall be stamped to show the time and date of actual receipt* and, unless otherwise specified . . . ,

---

[1] "'Adjustment of status' is a form of relief that allows a deportable alien who would be admissible to the United States if he were seeking to enter the country to adjust his status to that of an alien seeking entry." *Lacey v. Gonzales*, 499 F.3d 514, 519 (6th Cir. 2007) (quoting *Drax v. Reno*, 338 F.3d 98, 113 (2d Cir. 2003)). The Attorney General may in his discretion adjust an alien's status to that of a lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." *Id.* (quoting 8 U.S.C. § 1255(a)).

[2] Petitioner's birth parents are deceased. He was adopted by Muthana Omer Ahmed on March 16, 1998.

[3] The CSPA amended the INA "to provide age-out protection for aliens who were children (under 21) at the time a petition for permanent resident status was filed on their behalf." *Ochoa-Amaya v. Gonzales*, 479 F.3d 989, 992 (9th Cir. 2007). Prior to enactment of the CSPA, children lost their eligibility for adjustment of status if their application had not yet been acted upon when they turned twenty-one. The CSPA "was necessary to address the enormous backlog of adjustment of status (to permanent residence) applications which had developed at the INS." *Id.* at 992 (internal citation and quotation marks omitted).

[4] *See* 8 U.S.C. § 1151(f)(1) ("[A] determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using the age of the alien on the date on which the petition is filed with the Attorney General under section 1154 of this title to classify the alien as an immediate relative under subsection (b)(2)(A)(i) of this section.").

*shall be regarded as properly filed when so stamped*, if it is signed and executed and the required filing fee is attached . . . ." 8 C.F.R. § 103.2(a)(7)(i) (emphasis added). The petitioner, however, "must establish that he or she is eligible for the requested benefit at the time of filing the application or petition. All required application or petition forms must be properly completed and filed with any initial evidence required by applicable regulations and/or the form's instructions." 8 C.F.R. § 103.2(b)(1). "If all required initial evidence is not submitted with the application or petition or does not demonstrate eligibility, [CIS] in its discretion may deny the application or petition for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by [CIS]." 8 C.F.R. § 103.2(b)(8)(ii). A petition will be approved by CIS "only if the evidence of record establishes both eligibility and that the petitioner . . . warrants a favorable exercise of discretion." 8 C.F.R. § 103.2(b)(8)(i).

Here, the parties do not dispute that Ahmed turned twenty-one on January 5, 2004. Therefore, if Ahmed could demonstrate that the I-130 petition was filed on his behalf prior to his 21st birthday, he would be eligible for an immediate relative position under the CSPA. Conversely, if he was twenty-one at the time the petition was filed, although the application might be granted, Ahmed would not be entitled to an immediate adjustment of status, but would be required to wait for his visa eligibility date.

Ahmed's father initially filed an I-130 petition for Ahmed as beneficiary, along with an adjustment application (Form I-485) and supporting evidence, with the Detroit CIS district office on November 12, 2003. However, the record shows that Detroit CIS returned the entire packet to Ahmed for failure to comply with certain documentation requirements. Specifically, the petition did not include a pre-adoption birth certificate and there was no proof of special NSEERS registration. *See* Registration and Monitoring of Certain Nonimmigrants, 67 Fed. Reg. 52, 584 (Aug. 12, 2002); *Hadayat v. Gonzales*, 458 F.3d 659, 661 (7th Cir. 2006).

At the August 2004 removal hearing, Ahmed maintained that his adoptive father, through his attorney, resubmitted the I-130 petition and I-485 application, with the requisite information, by placing it in the mail, addressed to the Detroit CIS office, on December 31, 2003. Indeed, the record contains a cover letter dated December 29, 2003, sent by Ahmed's attorney to CIS, in which counsel noted that Ahmed's I-130 petition, I-485 application packet, and original birth certificate were enclosed for CIS's immediate consideration. In the letter, counsel acknowledged that the original I-130 petition had been returned as incomplete and emphasized that in light of Ahmed's impending 21st birthday, it was imperative that the petition be reviewed in an expedited manner.

The Detroit CIS office received the resubmitted petition and then internally forwarded it to the INS Nebraska Service Center for further processing. A Receipt Notice, admitted as an exhibit, shows that the Nebraska Service Center received the petition on January 12, 2004, after Ahmed's 21st birthday.[5] There was, however, no evidence available at the time of the August 2004 removal hearing indicating when the I-130 petition was physically received by Detroit CIS before being sent on to the Nebraska Service Center. Ahmed thus requested, and the IJ granted, a six-month continuance so that Ahmed could attempt to ascertain the precise receipt date by Detroit CIS of the renewed I-130 petition.

At the continued hearing on February 9, 2005, Ahmed again conceded removability, but sought a second continuance. He had filed a Freedom of Information Act request with CIS to secure documentation that might establish, with specificity, Detroit CIS's receipt date of the resubmitted I-130 petition. Although CIS received the FOIA request on October 4, 2004, Ahmed had not

---

[5] The Receipt Notice sent to Ahmed indicated that "The above application or petition has been received. It usually takes 495 to 525 days from the date of this receipt for us to process this type of case."

received a response as of the date of the hearing. Ahmed's attorney indicated to the IJ that through his contacts with an FOIA officer at the Detroit CIS office, he learned that CIS had not yet begun processing the FOIA request. Counsel for petitioner acknowledged that the only ascertainable filing date of the I-130 petition in the record was the January 12, 2004, date reflected in the Receipt Notice sent from the Nebraska Service Center. Counsel for DHS confirmed that his file was void of any information reflecting a physical receipt date other than January 12, 2004. Petitioner's counsel indicated to the IJ that he was not relying on the filing date of the initial, rejected I-130 petition as the basis for his claim that Ahmed had not "aged out" under the CSPA. Instead, as underscored by his request for a second continuance, the gist of his argument was that the date on which the December 31, 2003, resubmitted petition was received by the Detroit CIS district office was the determinative filing date.

At the conclusion of the continued hearing, the IJ issued an oral decision in which she found that Ahmed was removable pursuant to 8 U.S.C. § 1227(a)(1)(B). The IJ denied Ahmed's request for adjustment of status pursuant to 8 U.S.C. § 1255. In this regard, the IJ concluded that even though Ahmed was the intended beneficiary of an I-130 petition filed by his adoptive father on his behalf, he did not qualify for an immediately available immigrant visa under the CSPA because the record established that the I-130 petition was filed on January 12, 2004, after Ahmed's 21st birthday, and Ahmed provided no evidence to the contrary. Thus, the IJ held that Ahmed had "aged out" before the petition was received by CIS. In light of this finding, the IJ denied Ahmed's request for a second continuance as a matter of discretion and ordered his voluntary departure or, should he fail to comply, his removal to Yemen.

On February 16, 2005, Ahmed filed an appeal with the BIA, in which he asserted that by virtue of his constructive filing of the I-130 petition on November 12, 2003, or through the resubmission of the I-130 petition in January 2004, he should be classified as the beneficiary of an immediate relative visa petition and eligible for adjustment of status in the United States. Ahmed further claimed that the IJ abused her discretion in denying a second continuance pending the results of his FOIA request with CIS and the adjudication of his I-130 petition. He also argued that CIS improperly returned his initial petition in violation of regulations pertaining to the filing and processing of visa petitions.

On January 10, 2006, Ahmed filed his appeal brief and a motion to remand with the BIA, requesting that the case be remanded to the IJ for the consideration of newly acquired evidence. This evidence allegedly demonstrated that the Detroit CIS office received his resubmitted I-130 petition in advance of his 21st birthday. In support of his motion, Ahmed submitted various exhibits including, *inter alia*, documents received recently from CIS in response to his FOIA inquiry. Although the bulk of these materials did not contain information bearing on the specific filing date, one document was relevant to this pivotal issue. It was a photocopy of the front of the envelope used by Ahmed's attorney to send the resubmitted I-130 petition to Detroit CIS. Unfortunately, the photocopy was of very poor quality and rendered virtually illegible the postal cancellation stamp and an upside-down date stamp located on the front of the envelope.

In its response to Ahmed's motion to remand, DHS acknowledged that the photocopy was "difficult to read," but discerned that the date stamp "demonstrates that the visa petition was received by CIS in Detroit on January 10, 2004, 5 days after [Ahmed's] 21st birthday."

The BIA made no mention of this exhibit or its consequences when, on May 16, 2006, it issued a three-paragraph per curiam opinion affirming the decision of the IJ and ordering Ahmed's voluntary departure or removal to Yemen. The BIA stated:

> The pertinent facts of this case are set forth by the Immigration Judge and have not been shown to be clearly erroneous. We find that [petitioner] was provided a fair

opportunity to present his request for a second continuance. . . . Considering the reasons set forth in the Immigration Judge's decision, we do not find she erred in ruling that a second continuance was not warranted and that the [petitioner] failed to establish that his visa petition had been filed before his 21st birthday and thus was ineligible for consideration of adjustment of status pursuant to the [CSPA]. Accordingly, in view of the above and in the absence of any evidence to the contrary, we find no basis to remand this matter to the Immigration Judge and the appeal is dismissed.

Ahmed thereafter filed the present petition for review, in which he avers in pertinent part that the BIA abused its discretion in denying his motion to remand the case to the IJ for reconsideration of his immigration status in light of the evidence obtained as a result of his FOIA inquiry. This evidence allegedly confirms that the resubmitted I-130 petition was physically received by the Detroit CIS office, and therefore properly filed, before his 21st birthday.

Ahmed's case was heard before this court on September 17, 2007. Following oral argument, we directed, through the Clerk of the Court, that respondent produce for our review the original envelope mailed by Ahmed's attorney to the Detroit CIS office on December 31, 2003, so that we might decipher the date stamp on the poor reproduction contained in the record. The actual envelope has since been located by DHS and filed with this court. The original reveals that it was sent by Ahmed's attorney and addressed to the "U.S. Department of Homeland Security, Citizenship and Immigration Services, Detroit District Office, P.O. Box 14760, Detroit, MI 48214." The envelope bears a very clear postal cancellation stamp date of December 31, 2003, and a date stamp of January 12, 2004, when the envelope was received in Nebraska, not Detroit (as confirmed by the Receipt Notice acknowledging that the petition was received by the Nebraska Service Center on January 12th). It therefore logically follows that sometime between these two dates, the Detroit CIS office received the envelope, before internally forwarding it to Nebraska.

Given this new evidence – proffered to the BIA for its review at the time of Ahmed's appeal, but not explicitly scrutinized by the BIA for its relevance to Ahmed's claim that his I-130 petition was timely filed under the CSPA – we conclude that the BIA abused its discretion in denying Ahmed's motion to remand to the IJ for further consideration of his eligibility for adjustment of status as a "child" and immediate relative of an American citizen under the CSPA and 8 U.S.C. § 1255.

## II.

In the context of the BIA's denial of a motion to remand, or its affirmance of the IJ's denial of a motion for continuance, an abuse of discretion occurs if "the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination," *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).[6] The BIA may properly deny a motion to remand or reopen[7] where an alien fails to establish a prima facie case of eligibility for the relief sought. *Alizoti v. Gonzales*, 477 F.3d 448, 451-52 (6th Cir. 2007); *Taghzout v. Gonzales*, 219 F. App'x 464, 473 (6th Cir. 2007). "Prima facie evidence, according to the BIA, is evidence that

---

[6]In the present circumstances, we have jurisdiction to review the BIA's discretionary denial of petitioner's motion to remand, as the motion pertains to Ahmed's eligibility for relief, not the merits of whether to grant an adjustment in the exercise of discretion. *Abu-Khaliel*, 436 F.3d at 634; *Pilica v. Ashcroft*, 388 F.3d 941, 945-48 (6th Cir. 2004).

[7]Motions to remand or to reopen are generally treated the same. *See Fieran v. INS*, 268 F.3d 340, 344 n.2 (6th Cir. 2001); *El Harake v. Gonzales*, 210 F. App'x 482, 490 n.16 (6th Cir. 2006).

reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Alizoti*, 477 F.3d at 452 (internal citation and quotation marks omitted). *See, e.g.*, *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047-48 (6th Cir. 2007) (affirming IJ's denial of motion for continuance to allow DHS to act on alien's motion to reopen adjustment of status proceedings, where motion had been pending without action for fourteen months, alien did not file new documentary evidence supporting continuance and had considerable time to gather relevant evidence, and IJ had reason to believe alien would not prevail on motion to reopen); *Badwan v. Gonzales*, 494 F.3d 566, 569-70 (6th Cir. 2007) (reversing IJ's denial of continuance where it was alien's first request for a continuance, the motion was unopposed, and alien "made a good faith attempt to satisfy the documentation requirement in a difficult situation" and "amply showed a 'likelihood of success'" that he would be able to cure deficiency in documentation supporting application for adjustment of status); and *El Harake*, 210 F. App'x at 490 ( affirming IJ's denial of alien's motion for continuance and remand where alien "did not provide any evidence that suggested that he had any likelihood of success in adjudicating his I-485 petition."). Generally, where a motion to reopen is sought for adjudication of an adjustment of status application, a petitioner must submit a completed application and all supporting documentation. *Alizoti*, 477 F.3d at 452.

Here, Ahmed did exactly that – he provided the BIA with proof of his resubmitted I-130 petition and requisite supporting evidence, and he adequately demonstrated a likelihood of success in achieving immediate adjustment of status under the CSPA. At the time of the continued hearing before the IJ, the evidence, at a minimum, demonstrated that the resubmitted petition was mailed on or before December 31, 2003, suggesting the strong possibility that the petition was received by CIS before Ahmed's 21st birthday. An FOIA inquiry was pending that might shed further light on the critical issue of the receipt date of the resubmitted petition.

The FOIA materials arrived fortuitously during the pendency of Ahmed's BIA appeal and confirmed that Ahmed's resubmitted petition was mailed from the Detroit suburb of Southfield, Michigan, on Wednesday, December 31, 2003. By all reasonable calculations, the envelope should have been received by the Detroit CIS office on or before petitioner's birthday on Monday, January 5, 2004, even considering closure for the New Year's holiday. Moreover, because the initial I-130 petition sent by Ahmed in November 2003 was rejected as incomplete and returned by the *Detroit* CIS office, that same office presumably reviewed – at least cursorily for facial compliance – Ahmed's resubmitted petition before forwarding it to Nebraska. The record reflects that Ahmed engaged in diligent, if not urgent, efforts to timely file the second petition after the initial one was rejected.

Nonetheless, on appeal, the BIA failed to expressly address the newly acquired evidence appended to Ahmed's brief and motion to remand, which indicated that the December 31, 2003, resubmission of the I-130 petition was physically received by CIS in Detroit prior to being forwarded to the regional Nebraska Service Center, where it was stamped as received on January 12, 2004. Just as we ordered the production of the original envelope sent by Ahmed's attorney on December 31, 2003, in order to examine and verify the postal cancellation stamp and date stamp, the BIA could have done the same. The BIA, however, neither acknowledged this evidence nor addressed its implications in terms of Ahmed's contentions that the resubmitted I-130 petition was properly filed before his 21st birthday, that physical receipt of the resubmitted I-130 petition by the Detroit CIS office should govern for purposes of the CSPA, and that CIS's alleged noncompliance with the regulatory requirement that a petition be "stamped to show the time and date of actual receipt" so as to be "regarded as properly filed when so stamped," 8 C.F.R. § 103.2(a)(7)(i), unfairly deprived him of eligibility for immediate relative visa classification under the CSPA and 8 U.S.C. § 1255.

Under these circumstances, we hold that the BIA acted without rational explanation and therefore abused its discretion in denying Ahmed's motion to remand to the IJ for further

consideration of his application and qualification for immediate adjustment of status, where Ahmed established a prima facie case for the relief sought. *Alizoti*, 477 F.3d at 452.

### III.

Therefore, for the foregoing reasons, we grant the petition for review, vacate the order of removal, and remand to the BIA for further proceedings consistent with this opinion.